

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

Criminal Action Number 3:08CR185

JAMES STEVEN LESANE,

Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion to Dismiss pursuant to 18 U.S.C. § 3162 and Defendant's Motion to Suppress. For the reasons stated below, both motions are DENIED. Each motion is discussed in turn.

### I.

The executed arrest warrant shows that Officer Mike Weston arrested Defendant James Steven Lesane on February 1, 2008. On April 21, 2008, the Government charged Lesane in a one-count Indictment alleging conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of a mixture and substance containing detectable amounts of cocaine base. Lesane filed a "Motion for Bond"and a "Motion to Fire Counsel" on April 28, 2008, seeking removal of his counsel and dismissal of his case pursuant to 18 U.S.C. § 3162. The Court appointed new counsel on April 28, 2008, and heard oral argument on his motion for dismissal on May 7, 2008.

Pursuant to 18 U.S.C. § 3161(b), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Section 3162 provides that if an indictment or information is not filed within the 30-day time limit prescribed by

§ 3161(b), "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). Dismissal under § 3162(a)(1) is mandated, unless the Government can demonstrate that one of the exceptions under § 3161(h) applies. See United States v. Leftenant, 341 F.3d 338, 344 (4th Cir. 2003) (explaining that "§ 3161(b) does not require that an indictment be returned within thirty calendar days of arrest. Instead, it requires that an indictment, in order to be considered timely, be returned within thirty nonexcludable days").

Section 3161(h) provides for certain periods of excludable delay that extend § 3161(b)'s 30-day period. The most relevant of these tolling provisions are § 3161(h)(1) and § 3161(h)(1)(F). Section 3161(h)(1)(F) excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Section 3161(h)(1) excludes "[a]ny period of delay resulting from other proceedings concerning the defendant." (emphasis added). Although § 3161(h)(1) explicitly lists ten periods of delay which may be excluded, § 3161(h)'s list is not exhaustive. Significantly, the United States Court of Appeals for the Fourth Circuit has interpreted "other proceedings concerning the defendant" to include plea negotiations and pretrial hearings. See Leftenant, 341 F.3d at 344-45.

In this instance, the record demonstrates that Lesane was arrested on February 1, 2008 and the Indictment was entered on April 21, 2008, which is 51 days outside of § 3161(b)'s 30-day period. The Government argues that 54 days are excludable: (1) 2 days due to pretrial hearings (February 1, 2008 - Lesane's initial appearance and February 6, 2008 - the date of the preliminary/detention hearing); (2) 34 days (March 5, 2008 through April 8, 2008) because the parties were engaged in plea negotiations; and (3) 18 days (April 3, 2008 through April 21, 2008) resulting from Lesane's first letter motion filed on April 3, 2008, which Lesane asked to be regarded as a "motion to have counsel

removed from my case."

Lesane contests the exclusion of the 34-day period that the Government attributes to plea negotiations because he asserts that the Government did not present him with a plea agreement until approximately one week before April. The Government rejoins that it actively engaged in plea discussions with Lesane through his former counsel, Alice Sheridan.[1] In support, the Government has presented an email from Ms. Sheridan, wherein she states "I know we were in plea negotiations and I know he has sent you a letter regarding 18 usc 3161." Additionally, at the hearing on April 28, 2008, Ms. Sheridan represented to the Court that the parties, indeed, were engaged in plea negotiations. Lesane disputes this representation and asserts that he instructed Ms. Sheridan "to fight" his case and to have him indicted. Contrary to Lesane's present assertions, Lesane testified that on the date of his arrest, he expressed a willingness to cooperate with the Government and, accordingly, met with a DEA agent on February 15, 2008. As such, the Court finds Lesane's contention that Ms. Sheridan acted without his consent incredulous.

Even assuming that Ms. Sheridan acted without Lesane's explicit consent, a defendant is "'bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'" New York v. Hill, 528 U.S. 110, 114 (2000) (quoting Link v. Wabash R. Co., 370 U.S. 626, 634 (1962)). The Court in Hill addressed whether an attorney, acting

---

[1]The Government proffers that, during the week of February 25, 2008, Ms. Sheridan and counsel for the Government had a conversation in which counsel for the Government advised that the Government was prepared to present an indictment to the next grand jury sitting on March 4, 2008. Ms. Sheridan, however, in an effort to minimize Lesane's exposure, specifically asked counsel for the Government not to do so and advised that Lesane wished to continue in plea negotiations. The parties continued their plea negotiations, which included the exchange of plea documents in early March 2008.

without indication of particular consent from his client, could waive his client's statutory right to a speedy trial pursuant to the Interstate Agreement on Detainers. The Court held that an attorney's statement, without any showing of the client's explicit consent, could waive the speedy trial right. Id. at 115. The Court reasoned that, like many decisions pertaining to the conduct of trial,"[s]cheduling matters are plainly among those for which agreement by counsel generally controls." Id. The Court further explained that counsel is in the best position to assess the benefit or detriment of the delay to the defendant's case or whether the defense could proceed any earlier. Id.

Although Hill addresses a different issue than presented here, Hill's underlying rationale is instructive. Plea negotiations on behalf of a client are part of a defense counsel's basic lawyering skills. Defense counsel's knowledge of the law places her in the best position to negotiate for her client and to evaluate the merits of a proposed plea offer. While defense counsel ultimately can not enter into a plea agreement on her client's behalf and should make every effort to keep her client involved in ongoing plea negotiations, defense counsel routinely engages in plea negotiations as a matter of course. Here, Ms. Sheridan actively participated in plea negotiations with the Government in an effort to minimize Lesane's exposure. Accordingly, the Court concludes that the 34-day period that Ms. Sheridan engaged in plea negotiations with the Government on Lesane's behalf is excludable.

## II.

The Indictment charging Lesane with conspiracy to distribute cocaine base covers activities spanning from July 18, 2006 through and including on or about December 4, 2007. Lesane moves

the Court to suppress statements and physical evidence obtained during three traffic stops, a traffic

checkpoint that led to a subsequent search of the vehicle, and a controlled purchase of crack cocaine.[2]

## A.

The Fourth Amendment safeguards the "right of the people to be secure in their persons,

houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.

A police officer may conduct an investigatory detention, commonly referred to as a Terry stop,

without violating the Fourth Amendment when the officer possesses a reasonable and articulable

suspicion that criminal activity is afoot.  Terry v. Ohio, 392 U.S. 1, 30 (1968); see also United States

v. Smith, 396 F.3d 579, 583 (4th Cir. 2005).  Whether the facts give rise to a reasonable and

articulable suspicion must be judged objectively, i.e., whether a "man of reasonable caution" in the

shoes of the police officer, given the facts, would believe the investigatory detention was appropriate.

Terry, 392 U.S. at 20.

Although reasonable suspicion is a less demanding standard than probable cause, "[t]he

officer . . . must be able to articulate something more than an inchoate and unparticularized suspicion

or hunch."  United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations omitted).  To

determine whether an officer had a reasonable suspicion of criminal activity, courts assess the totality

of the circumstances surrounding the seizure.  Id. at 8.  Evidence seized, however, as a result of an

illegal stop is subject to suppression under the fruit of the poisonous tree doctrine.  United States v.

---

[2]Lesane moves for suppression of the evidence from the controlled purchase transaction on the basis that it is highly prejudicial, and not probative of any involvement by the defendant or of a conspiracy.  Because Lesane fails to raise any cognizable constitutional basis to suppress any evidence pertaining to the controlled purchase of crack cocaine, his challenge to this transaction is dismissed without further discussion.

Hassan El, 5 F.3d 726, 729 (4th Cir. 1993).

**1.**

On November 25, 2006 at approximately 1:12 a.m. in Spotsylvania County, Virginia, Officer Davis Hart observed Lesane's vehicle remain stationary through two cycles of green lights. Suspecting that Lesane was intoxicated, Officer Hart initiated a traffic stop. During the stop, Lesane produced an expired rental agreement for the vehicle. The officer conducted a pat-down of Lesane's person for officer safety and felt "several large items" in Lesane's pocket. Lesane advised that it was his "rent money" and consented to the officer's request to remove the money. Lesane removed $6,040 bundled in six stacks, as well as an additional $1,200 in three separate stacks.

Without prompting from Officer Hart, Lesane voluntarily gave Officer Hart permission to search the vehicle. Officer Hart discovered plastic baggies with missing corners, a plastic corner bag containing suspected cocaine on the ground next to the passenger side of the vehicle, and a quantity of cocaine on the passenger in the vehicle, Kenneth Lesane (James Lesane's brother). Although Kenneth Lesane was charged with possession with intent to distribute cocaine, no charges were brought against James Lesane. Presently, James Lesane contends that there was no reason to continue the stop because there is no indication that the officer smelled alcohol on or about Lesane's person, and an expired rental agreement or large amount of cash on your person is not inherently indicative of a crime.

In light of the lateness of the hour and the officer's observation of Lesane's vehicle, the Court finds that the stop was supported by a reasonable suspicion. See United States v. Arias, 213 F. App'x 230, 231-32 (4th Cir. 2007) (unpublished) (affirming the district court's finding of a

reasonable, articulable suspicion where the police officer observed the defendant's car remain stopped at a green light at 12:30 a.m. with a hanging tail-light); United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) (internal citation omitted) (noting that the "lateness of the hour is another fact that may raise the level of suspicion"). Additionally, Lesane's argument that neither an expired rental agreement nor the large amount of cash bundled in six stacks on Lesane's person gave the officer reason to continue with the stop lacks merit because Lesane consented to a search of the vehicle voluntarily.

**2.**

On December 4, 2007, Lesane and his wife, Jaime Coleman, were at their residence located in Spotsylvania County, Virginia. On that same date, Brittany Coleman visited the residence to obtain DVDs from her sister Jamie Coleman. When Brittany left the residence, police officers stopped her vehicle. The officers inquired about two fugitives that the officers suspected were in the home. Officer Taylor instructed Coleman to leave and not to call back to the residence. Nonetheless, when Brittany arrived home, she contacted her sister and informed Jamie that police officers were watching the house and that it probably would be best if she left the residence. Jamie, Lesane, Sherry Hickman, and Ralph Minter left the residence in Hickman's vehicle. Subsequently, the same officers stopped the vehicle for failure to stop at a stop sign. Lesane denies that the vehicle failed to stop asserting that the vehicle was proceeding cautiously because of Brittany's warning. As such, Lesane argues that the stop was pretextual as the officers clearly had other motives for stopping the vehicle.

In Hassan El, the defendant argued that the police used a minor traffic violation as a pretext

7

to conduct a stop of his vehicle and to search, without justification, for more serious criminal activity. 5 F.3d at 729. Addressing the pretextual stop issue, the Fourth Circuit adopted an objective standard, which relies solely on the objective facts and circumstances surrounding the stop, because "such an approach minimizes inquiry into a police officer's state of mind." Id. at 729. Thus, regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity, the stop remains valid because the traffic violation gave the officer probable cause. Id.; see also United States v. Jackson, 235 F. App'x 155, 156 (4th Cir. 2007) (unpublished) ("Observation of any traffic violation, no matter how minor, gives an officer probable cause to stop the driver.")

Although Lesane asserts that the driver stopped at the stop sign, the Court finds Officer Christopher Taylor's testimony to the contrary credible. Because the traffic violation gave Officer Taylor probable cause to stop the vehicle, there is no Fourth Amendment violation regardless of whether the officers had other ulterior motives for stopping Lesane. See id; Whren v. United States, 517 U.S. 806, 813 (1996) (holding that the constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved - "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis").

## 3.

On April 26, 2007 at approximately 1:00 in the afternoon, Sergeant J.D. Cameron stopped Lesane's vehicle for swerving and making improper lane changes and driving nine miles over the speed limit. While Sergeant Cameron was speaking with Lesane, he detected the odor of burnt marijuana. Sergeant Cameron proceeded to search Lesane's vehicle and a small leather bag on the

seat next to him.  Sergeant Cameron uncovered crack cocaine from Lesane's bag.  Although Lesane concedes to the validity of the initial stop, Lesane argues that the officer lacked the additional probable cause to search his leather bag.

Lesane relies on Arkansas v. Sanders, 442 U.S. 753, 99 (1979), holding that in the absence of exigent circumstances, police are required to obtain a search warrant before searching luggage in a vehicle that was lawfully stopped.  But, it is well settled that the Fourth Amendment permits warrantless searches under the "automobile exception," and that a warrantless search of an automobile could include a search of a container or package found inside the car when such a search is supported by probable cause.  United States v. Ross, 456 U.S. 798, 823 (1982); see also California v. Acevedo, 500 U.S. 565, 570 (1991) (explaining that Ross "took the critical step of saying that closed containers in cars could be searched without a warrant because of their presence within the automobile," and that "[d]espite the protection that Sanders purported to extend to closed containers, the privacy interest in those closed containers yielded to the broad scope of an automobile search").  Further, the Fourth Circuit has recognized that the odor of marijuana alone can provide sufficient probable cause to justify a warrantless search of a vehicle and baggage within that vehicle.  United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002) (finding narcotics officers' search of a knapsack in the car valid based on the officers' detection of marijuana) (citing United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991) (holding that, because marijuana has a distinct smell, "the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage")).  Applying these principles here, the odor of marijuana provided Sergeant Cameron probable cause to search the vehicle and Lesane's leather bag.

**B.**

On September 20, 2007, the police conducted a spot checkpoint. At the checkpoint, the officers stopped the vehicle in which Lesane was traveling. Upon stopping the vehicle, the officers determined that the driver of the vehicle, Robert White, was driving on a suspended license. Jamie Coleman, Lesane, and one other person were passengers in the vehicle. The officers asked the passengers for identification to find a person with a valid driver's license to drive the vehicle. Upon running a check on the licenses, the officers found that all of the passengers, including Lesane, had known drug histories and one of the passengers was wanted on a capias. The officers arrested and searched the driver's side passenger with the outstanding capias.

The officers then obtained consent from the driver to search the vehicle and consent from the passengers to search their persons. The officers discovered a scale with powder residue in the trunk of the car and contraband on Jamie Coleman. Coleman denied that Lesane had anything to do with the drugs. The officers did not charge Lesane with any violations as a result of the stop and search. Presently, Lesane contends that there is no evidence that the checkpoint was authorized.

Stopping a vehicle at a checkpoint constitutes a seizure of a person within the meaning of the Fourth Amendment. United States v. Brugal, 209 F.3d 353, 356 (4th Cir. 2000). Constitutional challenges to checkpoint seizures turn on whether the initial stop at the checkpoint was reasonable, which is "determined by balancing the gravity of the public interest sought to be advanced and the degree to which the seizures do advance that interest against the extent of the resulting intrusion upon the liberty interests of those stopped." Id. Courts have recognized that "a brief stop at a checkpoint for the limited purpose of verifying a driver's license, vehicle registration, and proof of

10

insurance is a reasonable intrusion into the lives of motorists and their passengers even in the absence of reasonable suspicion that a motorist or passenger is engaged in illegal activity." Id. at 357; see also United States v. Price, 164 F. App'x 404, 405-06 (4th Cir. 2006) (unpublished) (explaining that "states have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles and hence that licensing, registration, and vehicle inspection requirements are being observed") (internal quotation marks omitted).  Nonetheless, "an initially permissible checkpoint seizure may transform into an impermissible one by further intrusions not based upon individualized suspicion or consent." Brugal, 209 F.3d at 357.  Consequently, "when an officer seeks to expand the investigation of a motorist beyond the reasons for the checkpoint, the officer must have a reasonable suspicion that the particular person seized is engaged in criminal activity or obtain consent during the time period the defendant is lawfully seized." Id. (internal citations and quotations omitted).

Although Lesane maintains that there is no evidence that the checkpoint was authorized, Officer Taylor testified that his supervisor sanctioned the licensing and registration checkpoint. Officer Taylor also stated that the officers wore uniforms, stopped every car, and that the stops were fairly brief.  Accordingly, this Court rejects Lesane's contention and finds that the checkpoint was authorized and reasonable.  See Brugal, 209 F.3d at 357; Price, 164 F. App'x at 405-06 (finding a driver's license checkpoint reasonable where it was sanctioned by a supervisor, officers wore traffic vests, stopped every motorist approaching from either direction and the stops were intended to be brief, as drivers only had to present a valid driver's license).  The Court also finds that the officers obtained consent to search the vehicle and the persons of the passengers traveling in the vehicle.  As such, no Fourth Amendment violation occurred.

## III.

For the foregoing reasons, Lesane's Motion to Dismiss and Motion to Suppress are DENIED as per the Court's Order of June 19, 2008 (**Dkt No. 28**).

Let the Clerk send a copy of this Memorandum Opinion to counsel of record.

> _____/s/_____
> James R. Spencer
> **Chief United States District Judge**

Entered this __3ʳᵈ__ day of July 2008